UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

UNITED STATES                              CRIMINAL DOCKET NUMBER 14-0182

VERSUS                                    CHIEF JUDGE DEE D. DRELL

BILL W. WOMACK                      MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is a motion to suppress (doc. # 38) filed by defendant, Bill W. Womack in which he argues that all evidence seized during the execution of Federal and State search warrants should be excluded from evidence at trial. A hearing on the motion was held before me on March 19, 2015.

<u>Propriety of the hearing</u>

Although a hearing on the motion had been set two months ago, the government, on the morning of the hearing, orally objected to the court going forward with the hearing. The government's co-counsel, Mr. Willis, argued that, under <u>Franks v. Delaware</u>, 98 S. Ct. 2674 (1978) the court lacked authority to hold a hearing on this motion to suppress which challenges the validity of the search warrant because of false statements contained in the supporting affidavit. Specifically, counsel suggested that a hearing could not be held unless the defendant first made a preliminary showing that (1) certain statements were false and (2), without the statements, the affidavit was inadequate to create probable cause for the search. Counsel also

1

suggested that, even if the showing were made, the hearing is to be limited to the false statements only.

Counsel is mistaken; neither proposition is correct.  What Franks holds is that in order for a defendant to be Constitutionally entitled to a hearing on such allegations, a preliminary showing is required, including a showing that the warrant would otherwise be unsupported by the affidavit. Franks does not hold that a federal court is prohibited or limited in any way from holding a hearing on a motion to suppress unless those two things are shown. Further, I find no Fifth Circuit authority suggesting such nor do I find any case where the Fifth Circuit  found a court's decision to hold a hearing improper. Indeed, the court's decision to hold a hearing is discretionary and is reviewed for abuse of that discretion. United States v. Harrelson, 705 F.2d 733, 737 (5th Cir.1983). "Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." Id. "Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be sufficiently definite, specific, detailed, and non-conjectural, to enable the court to conclude that a substantial claim is presented. Id.",  U.S. v. Thompson, 540 Fed. Appx. 445 (5th Cir. 2013).

Here defendant made an adequate preliminary showing, based on the testimony of Agent Megan Taylor at the detention hearing that there was never a determination by ATF that the incident was an explosion. To this day, the cause of the damage to the SUV is officially "undetermined". Neither was it obvious that the remaining allegations of the affidavit concerning defendant's threat against his wife or that he had possessed hand grenades and pipe bombs "a few months" before the incident and had been seen with a machine gun at some unknown point in

time, were adequate to support a finding of probable cause in the absence of the false statements.

Holding a hearing on defendant's motions to suppress in this case was not only proper, but necessary to a determination of the issues presented. In any event, it was within the court's discretion and was not prohibited by Franks.

## Factual Background[1]

On August 25, 2014, agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) were contacted by the Louisiana State Police and  FBI Agent Cliff Bland that an apparent "carbombing" had occurred in a GMC Yukon SUV type vehicle in Catahoula Parish.  ATF agents Mann, Taylor, Pias and Meadows were dispatched from Shreveport and, upon arriving on the scene, found the SUV which belonged to the defendant's estranged wife, Jan Womack, parked in the driveway of her mother's house where she was living at the time. The rear window was "busted"[2] out of the vehicle and glass was lying on the pavement outside the vehicle as well as inside the vehicle. What was described as the pieces of an "exploded" rabbit or other small animal were found inside the vehicle, primarily in the rear passenger area but distributed throughout the vehicle. The other windows and windshield were intact but appeared blackened by smoke. The investigation quickly focused on the defendant, Bill Womack, due to the fact the two were separated and because Womack had allegedly made a threat to Jan's sister the day before that if Jan put a key in the door of the family home she would be blown up.

---

[1]  The information presented here is a brief summary based on the search warrant affidavit which is the subject of this proceeding, testimony at the defendant's detention hearing (a transcript of which was introduced into evidence), and testimony and documents admitted at the hearing on March 19, 2015.

[2]  Testimony of ATF Agent Megan Taylor at the detention hearing.

The investigation at the SUV location by ATF agents Mann, Taylor and Meadows continued and an ATF canine handler in New Orleans was called to the scene with her explosives trained dog. Agents of the Louisiana State Police bomb squad were also present. According to testimony, Agent Pias left the SUV scene early in the investigation and went to the defendant's house. As the agents worked, only Pias remained in touch by text messaging with ATF Agent Boddie,  who had remained in Shreveport for the purpose of securing any necessary warrants. Because it was getting late in the day, and Boddie wanted to present an application for a search warrant to Magistrate Judge[3] Hornsby that day, Boddie prepared a search warrant application and supporting affidavit with the assistance of Assistant U. S. Attorney Reeg who was also in Shreveport.

Before preparing the warrant application, Boddie texted Pias saying he needed additional "PC", that is, probable cause. Pias responded that the other three agents were processing the scene of the SUV. Boddie never received additional information from Pias or from the other three agents. He never learned, prior to presenting the application to Judge Hornsby, that the dog had failed to alert on anything suggesting explosives and that the three  investigating agents had found no evidence of explosives materials.

At defendant's home, agents found what was described in the affidavit as "the burned carcass of what appeared to be a small animal" and in the remains, wires were visible. According to Agent Taylor, who testified at the detention hearing, ATF later determined  the carcass to be

---

[3]  There were references at the hearing including in witness testimony  and in the government's brief,  to Magistrate Judge Hornsby and to me as "magistrate". While it is an all-too-common error, it bears pointing out that the title "magistrate" no longer exists in the United States Courts, having been changed to "Magistrate Judge" 25 years ago in the Judicial Improvements Act of 1990, 104 Stat.5089, Pub. L. No. 101-650, §321 (1990).

that of a burned stuffed toy animal[4].

The search warrant was issued and, pursuant to it, agents went into defendant's home and the "saddle house", an outbuilding at defendant's house, where they found numerous firearms and explosive devices.

### The Supporting Affidavit

The affidavit which Agent Boddie signed and presented to Judge Hornsby contains the following critical facts:

Par. 3–that officers of the Louisiana State Police and Concordia[5] Parish Sheriff's Office responded "to what was later determined to be an explosives incident . . . ."

Par. 4– that "the explosion occurred".

Par. 6–"I know the [concerned] individual told Agents that a few months ago, he/she witnessed WOMACK in possession of "pineapple style" "hand grenades" at an outbuilding on WOMACK's property . . .referred to as the "saddle house". The individual also stated WOMACK was in possession of "pipe bombs" a few months ago, and, further, that WOMACK has in his possession a .50 caliber machine gun and Thompson.45 style machine gun."

Par. 7– Jan's sister told Agent Pias that the night before the incident, Womack told her by phone that if his wife returned to the residence "she would be blown up if she put her key in the back door."

Par. 8– ATF Agent Pias and FBI Agent Deaton found "a burned carcass of what appeared

---

[4]  A photograph of it is in the record as Gov't. Exh 2.

[5]  Agent Boddie testified that, in fact, it was Catahoula Parish, not Concordia; he simply typed Concordia by mistake.

to be a small animal" in defendant's backyard containing a small spring and wires.

Defendant moves to suppress the evidence seized in connection with the search warrants asserting that, based on the fact that ATF later concluded, as testified to by Agent Taylor at the detention hearing, that no evidence of explosives materials were found at the SUV scene and the cause of the incident is "undetermined". Further, without the allegations that there had been an explosion, the affidavit contained no evidence supporting a finding of probable cause.  The "facts" set forth in paragraph 8 were stale with regard to the hand grenades and pipe bombs and, as to the machine gun no facts are presented as to how the informant knew there was a machine gun or how long ago he/she observed it, he argues.

<u>Analysis</u>

<u>The federal search warrant</u>

It is clear from the testimony of ATF Agent Taylor at the detention hearing, and of now-retired Agent Mann, who was in charge of the SUV Post Blast Investigation, that no explosives materials were found at the scene. At the end of his testimony, Agent Mann conjectured that perhaps the damage to the Yukon was caused by, for example, a "potato gun[6]" and , in that context, commented that there must have been some sort of "explosion" outside the car which could have propelled the rabbit through the rear hatch window of the vehicle. [7]

_____

[6]  While Agent Mann was not asked to describe what a potato gun is, the court's belief is that a  potato gun is generally understood to mean a homemade device constructed primarily of PVC pipe and often fueled by hair spray or other highly flammable substance and which utilizes potatoes as projectiles.

[7]  However, to the extent that comment might be construed to imply that explosive materials were used, it was conjecture and is not based on any evidence uncovered by ATF agents or others at the scene.

Therefore, the statements as to there having been an explosion, and that the event "was later determined to be an explosives incident" turned out not to be true.  That does not mean, however, that the evidence seized in the search pursuant to the warrant must be excluded. Instead, the court must first determine whether the good-faith exception to the exclusionary rule applies. That exception is that "[e]vidence obtained during the execution of a subsequently invalidated search warrant is not excluded if the officer executing the warrant relied on it in good faith." United States v. Gibbs, 421 F.3d 352, 357 (5th Cir.2005) (citing United States v. Leon, 104 S.Ct. 3405 (1984)). If the good-faith exception applies, we do not determine whether the warrant was supported by probable cause. Gibbs, 421 F.3d at 357. However,  the "exception does not apply when the magistrate [judge] or [district] judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  United States v. Cherna, 184 F.3d 403, 407 (5th Cir.1999); U. S. v. Blevins 755 F3d 312 (5th C. 2014). Therefore, it is necessary to determine whether Agent Boddie knew the information in his affidavit was false or whether he recklessly disregarded whether it was false.

It is also necessary to determine whether the remaining allegations of the warrant support a finding of probable cause if those statements are excluded.

When agents arrived on the scene of the SUV incident, they were presented with, by all accounts, the appearance of an explosion having occurred. The rear window of the SUV had been forcibly knocked out, the remaining windows were blackened, and what could only be described, for lack of a better word, as an "exploded" rabbit was found covering the interior of the vehicle. In addition, another charred carcass, complete with wires–later determined to have been a stuffed

7

toy animal--was found in the suspect's yard. The perpetrator had gone to great lengths to make the scene look like a real explosion and, according to the testimony, it did. A Post Blast Investigation, including the use of the canine, was begun and  it was being wrapped up about the time  the search warrant application was presented to Judge Hornsby[8]. This means that, at the time the application for a warrant was presented to Judge Hornsby attesting that the cause had been determined to be an explosion, Agents Mann, Taylor and Meadows knew that no evidence of an explosion had been found at the SUV and their investigation was almost completed.

   While  the statements that there had been an explosion were not true, there is no evidence that Agent Boddie knew they were untrue. We do know from the testimony presented that Agent Boddie attempted to find out the latest information and to get additional "P C" from Agent Pias right before he finalized the application for presentation to Judge Hornsby. He was told by Pias that the other agents were processing the SUV. It should have occurred to  Agent Boddie that he needed to speak to those who were processing the scene of the SUV and not to Pias who was off taking statements and surveying the defendant's home. Curiously, Agent Boddie never contacted Mann, Taylor or Meadows and those three agents never contacted him. Agent Boddie did testify that he was in touch with his and Agent Mann's boss, Raspberry, who was also in Shreveport and whom he believed was in touch with Mann. However, if  Raspberry had been in touch with Mann or his crew, he would have known that no explosives had been found and, no doubt, would have

---

[8]  Agent Mann testified that he was in charge of the SUV investigation and was being assisted by Agents Taylor and Meadows while Agent Pias went to defendants home and sought out witnesses for statements. Mann said that he was wrapping up the investigation at the SUV when he was notified that the search warrant had been signed by Judge Hornsby. He promptly completed the investigation so that he and agents Taylor and Meadows could go to the defendant's home to assist with executing the search warrant.

passed that information along to Agent Boddie who he knew was preparing the search warrant. Therefore, it is clear that the only information Agent Boddie had was what he had learned earlier that morning, before the investigation had been done.

Because of Agent Boddie's failure to communicate with the persons who were in a position to know whether explosives had been found or whether an explosion occurred, and their failure to communicate with him (even though they knew he was left in Shreveport for the purpose of preparing the affidavit for the search warrant), Boddie did not know that no evidence of explosives had been found.  The last he knew, the scene was thought to be that of a "carbombing", and the State Police bomb squad and an FBI bomb expert were all on the scene. Boddie also knew that Womack was reported to have threatened to blow up his wife. Admittedly, Boddie's statement in the affidavit that the incident "was later determined to be an explosives incident" is quite troubling since (1) at the time he wasn't told what it was  determined to be and, (2) it was never to this day determined to have been an explosives event.

I do not find that Boddie's failure to know was intentional. Further, I find that the communication failures do not rise to the level of reckless disregard for the truth. Boddie attempted to obtain additional information and "PC", albeit from the wrong person. Defense counsel does not suggest, and I find no evidence or indication, of a scheme to keep Agent Boddie in the dark so he could then mislead the Magistrate Judge.

Because Agent Boddie was in good faith and the false statements in the affidavit were neither intentional nor reckless, I find that the good  faith exception to the exclusionary rule applies and it is, therefore,  unnecessary to determine whether the search warrant was supported by probable cause. Nevertheless, for completeness I will consider the remaining allegations of the affidavit.

9

In paragraph 6 of the affidavit, it is alleged that an individual had reported seeing defendant in possession of "hand grenades" and "pipe bombs" "a few months ago" and had in his possession at a time not set forth, two machine guns. Defendant suggests this information was too stale to have supported a finding of probable cause to issue the warrant on August 25th. "Stale information cannot be used to establish probable cause." Marcilis v. Twp. of Redford, 693 F.3d 589, 601 (6th Cir.2012). When evaluating the staleness of information in an affidavit, the court considers the particular facts of the case, including the nature of the unlawful activity and of the evidence sought, especially whether the evidence "is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched." United States v. Craig, 861 F.2d 818, 822–23 (5th Cir.1988)." U. S. v. Robinson, 741 F.3d 588 (5th Cir. 2014).

The issue is whether hand grenades, pipe bombs and machine guns are items likely to be held for more than "a few months".  In analyzing that issue, it is clear that certain types of evidence might be held for long periods of time, for example computer files or photographs. Other evidence, for example, drugs or cash, might not be expected to remain in one location for long. I find that unusual items like machine guns, pipe bombs, and hand grenades are the sorts of things that a person is likely to keep for a longer, rather than shorter, period of time. Certainly it would be reasonable to expect that a person might keep those things for at least "a few months." Therefore, that information was not stale.

That leaves the burned rabbit carcass and the single statement that defendant was reported to have threatened to blow up his wife. Had those statements been the only supporting facts contained in the affidavit, the affidavit would be considered to be a "bare bones" affidavit to which the good faith exception would not apply. An officer is not entitled to invoke the good

faith exception if the affidavit upon which the warrant is founded is a "bare bones" affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable". U. S. v. Robinson, 741 F.3d 588 (5th Cir. 2014). However, when used to supplement the other, more substantive, factual allegations they too support probable cause.

The State search warrant

The day after the federal search warrant was signed, state agents presented an application for a state search warrant to a state district judge. The one-paragraph affidavit in support of it stated:

> A Federal Search warrant was applied for and granted for the search of the residence. During that search there was (sic) numerous firearms, explosives and approximately five pounds of suspected marijuana that was repackaged and consistent with the distribution and sale of Illegal Narcotics.

The state judge signed the warrant, it was executed, and an additional 23 items were seized.

The state affidavit is what is known as a "bare bones" affidavit and is wholly inadequate to support a finding of probable cause.  A "bare bones" affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate[9] can *independently* determine probable cause." [emphasis and footnote added]. United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir.1992). The state affidavit contained no facts from which the state court judge could have independently determined probable cause. He must make an independent

---

[9]  Here "magistrate" is used correctly, not to refer to a specific statutorily created judicial officer, but rather, generically, to refer to any judicial officer authorized to determine probable cause, such as a Federal District Judge, a State District Judge, or a Federal Magistrate Judge.

evaluation and may not rely on the fact that some other judicial officer had found probable cause on facts not even set forth in the state affidavit.

Again, the good faith exception is inapplicable to a bare bones affidavit . <u>Robinson</u>, supra. Therefore, the evidence seized should be excluded. <u>United States v. Mays</u>, 466 F.3d 335 (5th Cir. 2006).

For the foregoing reasons, IT IS RECOMMENDED that the motion to suppress be GRANTED IN PART and that all evidence seized pursuant to the state court warrant be excluded as evidence at trial. In all other respects, IT IS RECOMMENDED that the motion to suppress be DENIED.

## **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. .   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  No other briefs (such as  supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a  final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN**

**ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 27th day of March, 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE