UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CASE NO. 1:14-CR-00182-DDD-JMP |
| **VERSUS** | JUDGE DRELL |
| **BILL W. WOMACK** | MAGISTRATE JUDGE PEREZ-MONTES |

### RULING AND ORDER

Before the court is a motion entitled "Motion for Sentence Reduction Under 18 U.S.C. § 3582 (c)(1)(A) (Compassionate Release)" filed by defendant Bill W. Womack ("Defendant" or "Womack"). (Doc. 97). The government filed its response in opposition to Defendant's motion. (Doc. 99). The motion is, accordingly, fully briefed and properly before the court for disposition. Having carefully reviewed the record in this case, as well as relevant law and jurisprudence, the court has determined that the motion will be DENIED for the reasons fully explained below.

**I.   Background**

In a 2014 indictment, Womack was charged with a first count of possession of a machine gun in violation of 18 U.S.C. § 992(o); a second count of possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d); a third count of possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d); a fourth count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); a fifth count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and a sixth count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A) & (B)(iii). (Doc. 16).

On September 24th, 2015, Defendant signed a plea agreement and plead guilty to counts two and six. On December 21st, 2015, this Court sentenced him to fifty seven (57) months for count two and to sixty (60) months for count six running consecutively with the second count, with

1

credit for all time served in custody of the U.S. Marshal Service and with three years of supervised release. (Doc. 90).

Womack is currently incarcerated at FCI Oakdale I, a Bureau of Prisons ("BOP") facility in Oakdale, Louisiana. Womack is seeking compassionate release because of (i) the spread of COVID-19 at FCI Oakdale I and (ii) underlying medical conditions which the Defendant claims increases his risk of severe illness from COVID-19. Womack also wants to be released to provide care for his elderly mother. (Doc. 97 at p. 5).

**II.    Law and Analysis**

The compassionate release provision, as amended by the First Step Act of December 2018, provides in relevant part:

> (c) Modification of an imposed term of imprisonment. -- The court may not modify a term of imprisonment once it has been imposed except that --
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
>
> (i) extraordinary and compelling reasons warrant such a reduction ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ...

18 U.S.C. §3582 (c)(1)(A).

The Fifth Circuit has made clear that exhaustion of all administrative rights of appeal is a mandatory claim-processing rule. <u>United States v. Franco</u>, 973 F.3d 465, 468 (5th Cir. 2020). The

court must then find, after consideration of the factors set forth in 18 U.S.C. § 3553(a) that (1) extraordinary and compelling reasons warrant a sentence reduction and (2) any sentence reduction is consistent with applicable Sentencing Commission policy. 18 U.S.C. §3582 (c)(1)(A). Because the factors set forth in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy present consistent concerns, each will be discussed together.

A. Exhaustion of Remedies

Motions for sentence reduction under Section 3582(c)(1)(A), most often referred to as "compassionate release" motions, may be filed at the inmate's request by the Bureau of Prisons ("BOP") or by the inmate himself after exhaustion of his administrative remedies. The First Step Act amended § 3582(c) to provide an inmate an avenue to file a compassionate release motion on his own behalf after being denied relief by the BOP. Prior to the First Step Act, an inmate's only avenue to compassionate release was through the filing of a motion on his behalf by the BOP. United States v. Cantu, 423 F.Supp.3d 345, 347 (S.D. Tex. 2019). The exhaustion requirement for motions filed directly by an inmate is mandatory and a jurisdictional prerequisite in this court. Ross v. Blake, 136 S.Ct. 1850 (2016); United States v. Chambliss, 948 F.3d 691, 692-93 (5th Cir. 2020). Section 3582(c)(1)(A) provides that prisoners may: (1) file a motion with the court after fully exhausting all administrative rights to appeal the BOP's decision not to file a motion for compassionate release, or (2) file a motion with the court after requesting release when there has been a lapse of thirty (30) or more days from the receipt of such request by the warden of the defendant's facility, whichever is earlier. In each instance, the court will consider the inmate's administrative remedies fully exhausted. 18 U.S.C. §3582(c)(1)(A).

Evidence before the court establishes that Womack did exhaust his administrative remedies regarding this claim for compassionate release. He petitioned the Warden at FCI Oakdale I on

3

June 28, 2020 for relief, and the request was denied on July 29th, 2020. (Doc 97, Attachment #3). Accordingly, failure to exhaust is not at issue in this case.

    B. Extraordinary and Compelling Reasons

A court must also find that "extraordinary and compelling reasons" warrant the requested reduction. 18 U.S.C. §3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; or (4) other reasons. U.S.S.G. § 1B1.13, cmt. n.1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D).

Womack's motion contends extraordinary and compelling reasons exist for (i) his medical conditions which place him at an increased risk of serious illness from COVID-19, and (ii) the providing of care for his elderly mother.

4

      i.      Medical Conditions Increasing Risk of Serious Illness from COVID-19

When compassionate release has been requested because of medical conditions increasing the risk of serious illness from COVID-19, courts have concluded that extraordinary and compelling reasons warranting release exist where (1) defendant has underlying health complications that will or may increase the risk of severe illness from COVID-19, and (2) the BOP facility in question is either not taking proper precautions to protect the inmates from COVID-19 or despite precautionary steps the spread of COVID-19 within the BOP facility is uncontrollable. See United States v. Samuels, 2020 WL 7265378, *4 (W.D.La, 2020)(concluding defendant presented extraordinary and compelling reasons to warrant his release after finding (1) defendant was diagnosed with conditions which increase the risk of severe illness from COVID-19, and (2) an increase of 65 cases of COVID-19 among inmates within his BOP facility within a four day period.); See also United States v. Ullings 2020 WL 2394096, *4-5 (N.D. Ga, 2020)(concluding defendant presented extraordinary and compelling reasons to warrant his release after finding (1) defendant was diagnosed with conditions which increase the risk of severe illness from COVID-19, and (2) the facility in which defendant was detained was not practicing precautionary steps to curb the spread of COVID-19 including socially distancing inmates and requiring guards and inmates to properly wear facemasks when feasible.)

Defendant has chronic obstructive pulmonary disease (COPD) and a growth in his left lung. (Doc. 97 at p. 6; Doc. 97, Attachment #3). Current CDC guidelines suggest that COPD increases the risk of severe illness from COVID-19. Ctr. For Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020; last visited Jan. 5, 2021).

Regarding the management of COVID-19 within FCI Oakdale I, this Court understands each BOP facility is battling the COVID-19 pandemic the best it can with the resources it has available. The Court also recognizes that the BOP has made "extensive and professional efforts to curtail the virus's spread," see United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020), and that its operational procedures have been modified to combat any further spread.

Womack does not provide any evidence to support a finding of that FCI Oakdale I is presently failing to take proper precautions to protect inmates from COVID-19 or that the spread of COVID-19 within FCI Oakdale I is uncontrollable.

Given these facts, as a first step in the analysis this Court does not find the existence of extraordinary and compelling reasons which may warrant consideration of Womack's release for medical conditions increasing the risk of serious illness from COVID-19.

(ii)   Providing Care for a Parent

Application note 1 of the United States Sentencing Guidelines § 1B1.13 sets forth what may constitute "extraordinary and compelling" circumstances that would permit a court to grant relief under § 3582(c)(1)(A). The only statutorily enumerated grounds of family circumstances qualifying for compassionate release include: (1) death or incapacitation of the caregiver of the defendant's minor children, and (2) incapacitation of the defendant's spouse or registered partner when the defendant would be the only caregiver for the spouse of registered partner. Providing care for a parent is not listed as a consideration for compassionate release. Moreover, Womack does not provide any evidence regarding his mother's health or whether he is the only caregiver available. Therefore, we do not find that it warrants further consideration.

C. Consideration of § 3553(a) factors and Reduction Consistent with Policies of the Sentencing Commission

The government's response in opposition to Defendant's motion relies in significant part on the 18 U.S.C. § 3553(a) factors and the policies of the Sentencing Commission provided in U.S.S.G. § 1B1.13(2). (Doc. 166 at pp. 8-11). There is considerable overlap between the two and they will be discussed *en masse*.

18 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the offense; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. In the context of compassionate release, other considerations include (8) risk of recidivism the defendant poses, (9) the time remaining on his sentence, (10) the quality of his release plan, and (11) the impact of the BOP's efforts to maintain the safety of inmates.

Applicable policies of the Sentencing Commission require that Womack must no longer be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires consideration of (1) the nature and circumstances of the charge, (2) the weight of evidence against defendant, (3) the history and

characteristics of defendant, and (4) the nature and seriousness of the danger to any person of the community at large that would be posed by defendant's release.

Womack was charged with a first count of possession of a machine gun in violation of 18 U.S.C. § 992(o); a second count of possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d); a third count of possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d); a fourth count of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); a fifth count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and a sixth count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A) & (B)(iii). (Doc. 16).

The investigation into Defendant began August 25, 2014, after the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") responded to reports of a vehicle explosion, the vehicle belonging to the Defendant's wife. (PSR, ¶ 12). A post-blast investigation of the vehicle was unable to determine the cause of the incident; however, investigators observed exterior and interior damage and a rabbit's carcass scattered throughout the vehicle's interior. (PSR, ¶ 14).

During investigation Womack's sister-in-law advised that (1) Womack and his wife were going through a messy divorce, and (2) during an August 24, 2014 phone call between Womack and his sister-in-law, Womack stated that if his wife returned to the residence, "she would be blown up if she put her key in the back door." (PSR, ¶ 17).

The investigation of Womack's property revealed (1) a significant number of firearms, including machine guns, and several silencers (PSR, ¶¶ 29-37); (2) an even greater number of explosive devices, some professionally manufactured and others improvised, and live boobytraps capable of causing injury or death (PSR, ¶¶ 39-50); and (3) 1,585.7 grams of marijuana (PSR, ¶ 25). Regarding the active boobytraps, it took law enforcement three days with military assets from

Fort Polk, 705th Army Explosive Ordnance Disposal unit to clear Womack's property. (PSR, ¶ 23).

We find these facts concerning. Specifically, we find Defendant to be a danger to the community. Moreover, at the time of the request, Defendant has spent seventy five (75) months of a one hundred and seventeen (117) month sentence, i.e. less than sixty five percent (65%) of the total sentence. As a result, this Court does not find that compassionate release, at this time, is appropriate considering the foregoing 3553(a) factors mentioned above.

**Conclusion**

For the reasons enumerated above, it is hereby ORDERED that Defendant's motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

THUS DONE AND SIGNED at Alexandria, Louisiana this 21st day of January 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT